UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

DA SILVA PLASTIC AND RECONSTRUCTIVE
SURGERY, P.C.,

*Plaintiff,*

– against –

EMPIRE HEALTHCHOICE HMO, INC. and
EMPIRE HEALTHCHOICE ASSURANCE,
INC.,

*Defendants.*

**MEMORANDUM & ORDER**
22-cv-07121 (NCM) (JMW)

---

**NATASHA C. MERLE**, United States District Judge:

Plaintiff, a plastic surgery practice, filed this action seeking over $10 million in reimbursement for over 1,000 medical claims for medical services it provided to 366 patients. *See generally* Second Amended Complaint ("SAC"). Plaintiff's action against defendants alleges one federal and three state law causes of action referencing over 140 health plans. Defendants have moved to dismiss plaintiff's complaint for failure to state a claim based on numerous grounds, including failure to exhaust administrative remedies, failure to plausibly tie demands for reimbursement to any plan term, and the applicability of express anti-assignment clauses.

Despite the vastness of the relief plaintiff seeks, its thirty-nine-page SAC is thin; containing insufficient facts to properly allege entitlement to reimbursement for the 1,000-plus claims at issue. Specifically, plaintiff fails to adequately plead exhaustion, wrongful denial of benefits, and "participant or beneficiary" status as to each medical claim. Accordingly, plaintiff's claims relating to 311 patients pursuant to the Employee

Retirement Income Security Act ("ERISA") are dismissed without prejudice. The Court declines to exercise supplemental jurisdiction over plaintiff's state law claims relating to the remaining fifty-five patients. Further, the Court grants defendants' motion to sever plaintiff's claims.

Plaintiff is directed to file a status report addressing whether it intends to file a third amended complaint and, if so, proposing a method for severance of its claims by February 18, 2025.

## BACKGROUND

### I.    The Entities & the Health Benefit Plans

Da Silva Plastic and Reconstructive Surgery, P.C. (the "Practice") provides "medically necessary reconstructive plastic surgical services," often to patients with "emergency or urgent medical conditions" at various hospitals. SAC ¶¶ 1–2.

Plaintiff is not a participating provider in an Empire-administered or operated health plan, making it an "out-of-network" provider. SAC ¶¶ 3, 6. Patients are referred to plaintiff in a variety of ways, including through on-call plastic surgical providers in hospital emergency departments. SAC ¶ 52. Some patients are referred to plaintiff by other physicians when those physicians determine their patients need plaintiff's services. SAC ¶ 53. Over more than seven years, plaintiff provided a series of reconstructive plastic surgical procedures at hospitals and healthcare facilities throughout Long Island. SAC ¶¶ 18–20; *see generally* Claims Chart, ECF No. 39-2.

In New York, Anthem, now Elevance Health, operates through Empire under trade name "Empire Blue Cross Blue Shield." SAC ¶ 4. Empire Healthchoice HMO, Inc. and Empire Healthchoice Assurance, Inc. (collectively "Empire" or "Empire Blue Cross Blue Shield") are healthcare insurers and subsidiaries of health insurance provider Elevance

Health. SAC ¶¶ 4, 15. Pursuant to the relevant health plans here, Empire serves as either insurer of health plan benefits or "administrator of a self-funded health plan." SAC ¶ 24. In both roles, Empire determines whether a person is entitled to benefits, and computes benefit payments. SAC ¶ 26.

The health plans at issue provide coverage to enrollees for "Covered Services," for which Empire provides benefits pursuant to the enrollee's contract, such as "medically necessary physician services, specialist services, surgical services, emergency room services, and urgent care services." SAC ¶¶ 28, 29. Subscriber agreements also allow Empire members the right to seek medically necessary treatment from out-of-network healthcare providers. SAC ¶ 7. Even plans that do not permit reimbursement for the services of out-of-network physicians "all require reimbursement to out-of-network providers if those providers are rendering emergency services to a plan enrollee." SAC ¶ 37. It is based on these clauses that plaintiff now seeks millions of dollars in reimbursement. SAC ¶¶ 8, 9; Mot. 13, ECF No. 38; Opp'n 9, ECF No. 57[1]. Plaintiff also claims that, under federal and New York law, emergency services provided by out-of-network providers must be reimbursed directly "without the need of an assignment." SAC ¶ 101.

Out-of-network claims for plan reimbursement must be submitted to Empire "no later than 15 months after the services are rendered." SAC ¶ 42. After adjudication of a claim, Empire's plan documents permit dissatisfied claimants to submit appeals and grievances. SAC ¶ 43. A "Level 1 Appeal" of an adverse benefits determination must be

---

[1] The Court hereinafter refers to the Memorandum of Law in Support of defendants' Motion to Dismiss or, in the Alternative, to Sever, ECF No. 38, as the "Motion"; plaintiff's Memorandum of Law in Opposition, ECF No. 57, as the "Opposition"; and the Reply Memorandum of Law in Support of defendants' Motion, ECF No. 59, as the "Reply."

filed within 180 calendar days from the receipt of notice of denial of services. SAC ¶ 45. A "Level 2 Appeal" may be filed within 60 business days from the receipt of any notice letter denying a Level 1 Appeal. SAC ¶ 46. Grievances—verbal or written requests for review of adverse determinations not related to medical necessity—are to be filed on the same timeline. SAC ¶ 47–50.

Several health benefit plans at issue contain "anti-assignment clauses." SAC ¶ 93; *see generally* Claims Chart, ECF No. 39-2. Empire was allegedly informed that plaintiff obtained assignments of benefits from treated patients and did not object to the assignment until this suit was commenced. SAC ¶ 96, 97. Despite the anti-assignment clauses, Empire dealt directly with plaintiff orally and in writing, tendered partial payments, requested supporting medical records, and issued appeal responses and determinations. SAC ¶¶ 95, 99.

## II.    Nature of Claims and Reimbursements Claimed by Plaintiff

Many of the patients for which plaintiff seeks reimbursement for services rendered were referred to plaintiff by primary surgeons. Specifically, Empire members or beneficiaries were diagnosed by surgeons with severe spinal conditions that "required urgent . . . complex spinal surgeries." SAC ¶ 122. A surgeon determined that a "myocutaneous or fasciocutaneous muscle flap spinal closure" was clinically required for the patient, and that procedure was outside that primary surgeon's expertise. SAC ¶ 123. These surgeons "brought in" plaintiff's surgical team which is specifically trained to perform such closures. SAC ¶ 124. Subsequently, Empire denied the "muscle flap claims" and their appeals affirmed these denials. SAC ¶¶ 126, 127.

Plaintiff alleges that after providing services such as these to patients, it called Empire to obtain details about, among other things, coverage and reimbursement. SAC ¶

62. Plaintiff also submitted all claims at issue to Empire, pursuant to relevant instructions, "well within the required 15 months" after rendering services to patients. SAC ¶ 63. However, in all the medical claims at issue in this lawsuit, the Practice was "dissatisfied with Empire's adjudication," leading plaintiff to initiate internal appeals or grievances to Empire regarding the claims at issue. SAC ¶ 67.

Together, plaintiff alleges underpayment of over 1,000 claims under 144 health benefit plans. Mot. 10–11, 14. Allegedly, for each claim at issue, plaintiff either (i) "remained dissatisfied with the amount (if any) of reimbursement" or (ii) "failed to receive the required appeal or grievance determination from Empire within the time required by law." SAC ¶ 70. Plaintiff also claims to "routinely call[] Empire" to follow up on unpaid or underpaid claims and follow all instructions provided by Empire. SAC ¶ 142. While claiming to have exhausted all available appeal efforts (presumably both Level 1 and Level 2 appeals for all 1,000 claims), SAC ¶ 141, plaintiff fails to clarify for which claims it did not receive a notice of denial of services and for which specific claims it received some reimbursement.

Plaintiff claims entitlement through three species of plans or provisions. First, plaintiff claims entitlement to reimbursements for medically necessary services provided to patients who are enrollees of Empire-administered or operated health plans *with* out-of-network benefits. SAC ¶ 72. For such plans, the reimbursement rate Empire was obligated to pay was a percentage of the Maximum Allowed Amount for out-of-network services. SAC ¶ 75. Second, plaintiff claims entitlement from plans that do *not* provide out-of-network benefits, but reimburse out-of-network providers rendering emergency services for emergency medical conditions. SAC ¶¶ 85, 87; *see infra* (describing "emergency medical conditions"). Third, plaintiff claims entitlement through plan

documents with an "exception" if no in-network physician can provide the clinical services enrollees need; in such situations, reimbursement "at the in-network level" is due for services provided by out-of-network physicians. SAC ¶¶ 90, 91.

## LEGAL STANDARD

When deciding a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014).[2] Factual disputes are typically not the subject of the Court's analysis, as Rule 12 motions "probe the legal, not the factual, sufficiency of a complaint." *Plastic Surgery Grp., P.C. v. United Healthcare Ins. Co. of New York, Inc.*, 64 F. Supp. 3d 459, 468–69 (E.D.N.Y. 2014). That is, "the issue" on a motion to dismiss "is not whether a plaintiff will ultimately prevail" but instead whether a plaintiff is "entitled to offer evidence to support the claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012). Accordingly, dismissal is only appropriate if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000). At the same time, plaintiff must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conclusory allegations and legal conclusions masquerading as factual conclusions do not suffice to prevent a motion to dismiss. *Nwaokocha v. Sadowski*, 369 F. Supp. 2d 362, 366 (E.D.N.Y. 2005) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)).

---

[2]    Throughout this Opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

**DISCUSSION**

**I.    The SAC Must be Dismissed for Failing to State a Claim
          Under 12(b)(6)**

Plaintiff's complaint alleges causes of action for over 1,000 claims on behalf of 366

individual patients, subject to over 140 independent self-funded health benefit plans.

However, addressing 1,000-plus claims in a single complaint led plaintiff's factual

allegations to take the form of generalizations. Unfortunately, and perhaps inevitably, for

plaintiff, these generalizations are too conclusory to plausibly state a claim for any one

alleged ERISA violation. Because the Court finds that plaintiff has failed to plausibly state

a federal claim, the Court also declines to exercise supplemental jurisdiction over

plaintiff's remaining state law claims.

*A.    Plaintiff's Complaint Fails to State a Claim for Underpayment of
          Benefits Under ERISA*

Plaintiff's complaint alleges that defendants violated Section 502(a)(1)(B) of

ERISA by refusing to make proper reimbursement payments for charges covered by the

ERISA-governed plans at issue. But plaintiff's ERISA cause of action fails for a number of

reasons. First, the SAC fails to properly plead exhaustion with respect to each claim.

Second, plaintiff has failed to tie its claims for reimbursement to specific plan terms, but

instead makes blanket assertions regarding its entitlement to reimbursement. And third,

regarding a large subset of claims featuring anti-assignment provisions, plaintiff has no

ERISA cause of action because it is not a valid assignee.

i.    Plaintiff Has Failed to State a Claim for ERISA Exhaustion

Of the 366 patients implicated by plaintiff's service claims, 311 patients' claims are

governed by ERISA.

Plaintiff has failed to plausibly allege that it exhausted its administrative remedies for the claims governed by ERISA. *See* Mot. 11; O'Brien Decl. ¶ 5, ECF No. 40; Reply 14. It is "firmly established federal policy" that ERISA requires not only that "employee benefit plans have reasonable claims procedures in place," but also that "plan participants avail themselves of these procedures before turning to litigation." *Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 219 (2d Cir. 2006); *Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 140 (2d Cir. 2000). Courts require that plaintiffs exhaust "those administrative appeals provided for in the relevant plan or policy." *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d. Cir. 1993). *See Gordon Surgical Grp., P.C. v. Empire HealthChoice HMO, Inc.*, 724 F. Supp. 3d 158, 169 (S.D.N.Y. 2024) ("*Gordon I*") (outlining the policy goals of administrative exhaustion, such as providing a clear record of administrative action for possible litigation).

Failure to exhaust is an affirmative defense that is the defendants' burden to prove. *Neurological Surgery, P.C. v. Aetna Health Inc.*, 511 F. Supp. 3d 267, 295–96 (E.D.N.Y. 2021) ("*Neurological II*"). However, a plaintiff is required to establish exhaustion of administrative remedies as a prerequisite to pursuing its ERISA action. *Star Multi Care Servs., Inc. v. Empire Blue Cross Blue Shield*, 6 F. Supp. 3d 275, 292–93 (E.D.N.Y. 2014). "[B]lanket assertion of exhaustion of administrative remedies in a complaint is insufficient to withstand a motion to dismiss." *Am. Med. Ass'n v. United Healthcare Corp.*, 588 F. Supp. 2d 432, 450 (S.D.N.Y. 2008). As such, "courts routinely dismiss ERISA claims brought under Section 502(a)(1)(B) on a 12(b)(6) motion to dismiss where the plaintiff fails to plausibly allege exhaustion of remedies." *Abe v. New York Univ.*, No. 14-cv-09323, 2016 WL 1275661, at *5 (S.D.N.Y. Mar. 30, 2016) (dismissing claim under Section 502(a)(1)(B) where "no facts suggest[ed] any effort to exhaust the remedies

available through [plaintiff's] ERISA administrative plan" and collecting cases with similar holdings).

a.   Failure to Plead Exhaustion Efforts with Adequate Specificity

Here, plaintiff provides the type of "blanket assertion" that courts have found insufficient to withstand a motion to dismiss. In sum, plaintiff alleges that "all medical claims at issue in this lawsuit" were "subject to appeals or grievance (depending on the nature of the determination)." SAC ¶ 141. It does not elaborate more than asserting that it pursued the appeals process with respect to "unpaid or underpaid claims," SAC ¶ 142, and that those appeals were either "improperly denied or have been ignored altogether," SAC ¶ 143. Plaintiff further explains that it has only received "vague letters and promises of proper payment at some uncertain point in the future," "endless" documentation requests, and "vague allegations" of defenses to outstanding claims. SAC ¶ 146. These conclusory assertions fail to associate any one claim with the grievance and appeal processes that plaintiff took and subsequent responses they received.

Plaintiff's attempt to describe general similarities between the more than 1,000 failed appeals in this case does not cure its pleading deficiencies. Broad allegations that plaintiff "followed a similar pattern of attempted negotiations and appeals in connection with the services provided to all [patients]" are "certainly insufficient to withstand a motion to dismiss." *Gordon I*, 724 F. Supp. 3d at 185; *see also Am. Med. Ass'n*, 588 F. Supp. at 450 (holding that a "blanket assertion of exhaustion of administrative remedies in a complaint is insufficient to withstand a motion to dismiss").

In *American Medical Association*, the court explained that a plaintiff's failure "to identify the specific assigned claims which were exhausted and therefore in accord with the requirements under ERISA" was basis for dismissal. *Am. Med. Ass'n*, 588 F. Supp. at

450. Similarly, in *Gordon I*, plaintiffs specified "two examples of patients' medical claims" that had been exhausted, arguing that they were "illustrative and adequate to establish exhaustion as to" hundreds of other medical claims. *Gordon I*, 724 F. Supp. 3d at 167. Such pleading was also inadequate. *Id.*; *see also Murphy Med. Assocs., LLC v. 1199SEIU Nat'l Benefit Fund*, 2024 WL 2978306, at *4 (S.D.N.Y. June 12, 2024) (finding inadequate pleading of exhaustion when plaintiffs alleged "without further elaboration" that they had "appealed every claim submitted to the Fund, which were summarily denied"). Not only does the SAC lack a single specific illustrative description of particular claims that plaintiff attempted to exhaust, it generalizes assertions of exhaustion with respect to hundreds more.[3] Plaintiff's conclusory assertions fail to match any of the claims with the grievance and appeal processes that plaintiff allegedly took.

Plaintiff's assurance that it submitted "appeals and grievances to Empire as per the instructions on the applicable insurance cards and other documents" for each of the claims is not sufficient. SAC ¶¶ 68–69. To satisfy its pleading requirement, plaintiff was required to "provide the relevant plans' exhaustion requirements" and allege sufficient facts to show adherence to relevant procedures "as to *each* medical claim." *Gordon I*, 724 F. Supp. 3d at 168 (emphasis in original).

---

[3]    The SAC repeatedly references a "spreadsheet of medical claims in issue" that was never filed. *See* SAC ¶¶ 18, 73, 111, 141. In any event, a blanket assertion that all "claims on [an] attached spreadsheet were subject to appeals or grievance," even if actually accompanied by a spreadsheet detailing those claims, would still be insufficient to plead exhaustion. *See Gordon I*, 724 F. Supp. 3d at 168; *see also Gordon I* Second Am. Compl. Claims Chart, *Gordon Surgical Group, P.C. et al v. Empire HealthChoice HMO, Inc. et al*, No. 21-cv-04796 (S.D.N.Y. Feb. 3, 2023), ECF No. 58-1.

### 1. *Futility of Appeal Process*

Plaintiff also argues that even if the Court finds that plaintiff failed to adequately allege proper exhaustion of administrative remedies, the exhaustion requirement should be waived because any attempt to administratively exhaust would have been futile. SAC ¶¶ 145, 147; Opp'n 9. However, plaintiff fails to establish that defendants engaged in conduct to render their appeal "futile." SAC ¶ 145.

Where a plaintiff makes a "clear and positive showing that pursuing available administrative remedies would be futile, the purposes behind the requirement of exhaustion are no longer served, and thus a court will release the claimant from the requirement." *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993). The standard for demonstrating futility, however, is "very high." *Quigley v. Citigroup Supplemental Plan for Shearson Transfers*, 2011 WL 1213218, at *6 (S.D.N.Y. Mar. 29, 2011), *aff'd*, 520 F. App'x 15 (2d Cir. 2013). Where plaintiffs merely "rely on conclusory statements to attempt to demonstrate that it would have been futile to exhaust administrative remedies," they have not made the necessary "clear and positive showing" to argue futility. *Murphy Med. Assocs.*, 2024 WL 2978306, at *4.

Here, plaintiff again offers conclusory assertions of Empire's conduct to argue that pursuing administrative remedies would have been futile. Plaintiff generally describes actions taken by defendants, including, but not limited to: refusing to "provide the specific reason or reasons" for claim denials or underpayments; refusing to specify plan provisions "relied upon to support" denials or underpayments; and failure to "timely issue required notifications" that claims were denied or underpaid. SAC ¶ 145. Plaintiff does not make these assertions with respect to any specific claim or describe how these actions would have rendered appeal of any individual claim futile. Because plaintiff has "failed to

allege any facts from which the Court might infer that" its pursuit of administrative remedies under any particular plan would be futile, they have not demonstrated that the exhaustion requirement should be waived. *See Murphy Med. Assocs.*, 2024 WL 2978306, at *5 (quoting *Kesselman v. The Rawlings Co.*, 668 F. Supp. 2d 604, 609 (S.D.N.Y. 2009)).

On this basis alone, plaintiff's ERISA cause of action must be dismissed. However, even were the Court to find differently, it would still dismiss plaintiff's ERISA claims for failing to establish that it was wrongfully denied benefits.

ii.    Plaintiff Has Failed to State a Section 502(a)(1)(B) Claim

To bring an ERISA claim, a plaintiff must have both constitutional standing and a "cause of action under the applicable statute." *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016). Defendants do not dispute the existence of Article III standing, but do dispute whether plaintiff has an ERISA cause of action.

To state a claim under Section 502(a)(1)(B), plaintiff must show that (1) the benefit plan is covered by ERISA, (2) plaintiff is a participant or beneficiary of the plan, and (3) plaintiff was wrongfully denied benefits owed under the plan. *Guerrero v. FJC Sec. Servs. Inc.*, 423 F. App'x 14, 16 (2d Cir. 2011) (citing *Giordano v. Thomson*, 564 F.3d 163, 168 (2d Cir. 2009)). The parties do not dispute that the 311 patients discussed above were enrolled in plans covered by ERISA. However, the parties dispute the remaining two elements of an ERISA claim. Specifically, defendants allege that plaintiff is neither a participant nor beneficiary of the plans at issue, and was not denied benefits to which it was entitled.

Plaintiff has failed to allege that it was a participant or beneficiary of any plans featuring an anti-assignment clause. Additionally, plaintiff does not identify specific plan

provisions entitling it to reimbursement and thus fails to plausibly allege it was denied benefits under any ERISA plans. Because the question of whether plaintiff was wrongfully denied ERISA benefits concerns a larger set of patients, the Court addresses that prong first.

a.  Plaintiff Has Not Plausibly Alleged the Wrongful Denial of Benefits

Because a claim for benefits under ERISA is the assertion of a contractual right, a plaintiff must refer to the plan itself to establish its right to relief. *See Gordon I*, 724 F. Supp. 3d at 187 (citing *Pro. Orthopaedic Assocs., PA v. 1199 Nat'l Benefit Fund*, No. 16-cv-04838, 2016 WL 6900686, at *1 (S.D.N.Y. Nov. 22, 2016), *aff'd*, 697 F. App'x 39 (2d Cir. 2017)). Plaintiff must "specify the relevant Plan *provision* that would entitle [it] to the requested relief for each Medical Claim." *Gordon I*, 724 F. Supp. 3d at 170, 187 (emphasis added). Specification of a mere sampling of plan provisions that defendants allegedly violated is insufficient. *Id.*; *see also Anjani Sinha Med. P.C. v. Empire HealthChoice Assurance, Inc.*, No. 21-cv-00138, 2023 WL 5935787, at *6 (E.D.N.Y. Sept. 12, 2023) (dismissing a claim for payment at an "in-network" rate where plaintiff did not identify the provision in a patient's plan requiring defendant to pay that rate). Generalized allegations are not enough; plaintiff must plead "with specificity how the wrong reimbursement rates were applied" or how it is otherwise entitled to billed charges. *See Park Ave. Aesthetic Surgery, P.C. v. Empire Blue Cross Blue Shield*, No. 19-cv-09761, 2021 WL 665045, at *8 (S.D.N.Y. Feb. 19, 2021).

Here, plaintiff generally describes *types* of plan terms that might entitle them to claim reimbursement. Specifically, it explains that all "In-Network Only" plans entitle planholders to reimbursement of "emergency services for emergency medical

conditions." *See, e.g.*, SAC ¶ 85–89. Furthermore, defendants allegedly failed to honor reimbursement obligations for "medically necessary services" provided to Empire planholders with *out-of-network* coverage. *See* SAC ¶¶ 10, 72–73 (explaining the medically necessary services plaintiff provided to Empire enrollees at issue).

These are the sorts of conclusory allegations that do not pass Rule 12(b)(6) muster. In *Gordon I*, like here, plaintiffs' operative complaint sought reimbursement from Empire for "emergency care" based on plan terms that gave members "the right to seek medically necessary treatment from out-of-network providers." *Gordon I*, 724 F. Supp. 3d at 187. However, even where plaintiffs' operative complaint cited actual examples of relevant plan provisions—unlike here—to demand reimbursement, and even though plaintiffs attached a spreadsheet listing each relevant claim—which they failed to do here, the Court still found the pleading "too conclusory to demonstrate a plausible violation of any" relevant plan provisions. *Id.* at 188.

Where the *Gordon* complaint was too conclusory to state a claim, the SAC is even less specific. For one, unlike the *Gordon* complaint, the SAC does not even cite examples of medical necessity provisions. Secondly, plaintiff itself never provided the Court with any chart summarizing the claims at issue. *Cf.* SAC ¶ 18 n.1 (stating plaintiff's plans to submit a spreadsheet "listing the medical claims at issue"). Thus, plaintiff's complaint completely fails to specify provisions at issue and plausibly allege any specific provision was violated. *See also N. Jersey Plastic Surgery Ctr., LLC v. 1199SEUI Nat'l Benefit Fund*, No. 22-cv-06087, 2023 WL 5956142, at *6–7 (S.D.N.Y. Sept. 13, 2023) (finding complaint failed to state an ERISA benefits claim where it did not identify which plan provision entitled the plaintiff to the amount demanded, and collecting cases that have dismissed

"similarly defective claims that failed to identify a provision of the applicable plan documents entitling the plaintiff to the relief sought").

Plaintiff repeatedly cites *Neurological Surgery PC v. Empire Healthchoice HMO, Inc.* ("*Neurological I*"), to argue that it has made "detailed allegations adequately" stating a claim for additional benefits under ERISA. *See* Opp'n 19, 21. But plaintiff fails to mention that the operative complaint in *Neurological I*, written by its counsel in this current action, spanned 155 pages (compared to the SAC's less than forty pages) and detailed each health care claim at issue. *See* Am. Compl., *Neurological I*, No. 14-cv-07585 (E.D.N.Y. Mar. 30, 2016), ECF No. 18; *Neurological I* Tr. 11:13–12:14, ECF No. 58-2. The *Neurological I* complaint described *each patient's* emergency condition requiring "necessary health services" and the services that were ultimately provided. *Neurological I* Am. Compl. ¶¶ 58–721. Those minimal allegations are not present here. Furthermore, the Court affords less weight to *Neurological I* considering numerous more recent holdings affirming the rule that a claim is defective where it fails to identify the relevant provision in an applicable plan document. *See N. Jersey Plastic Surgery Ctr.*, 2023 WL 5956142, at *7 (collecting cases).

Accordingly, plaintiff's complaint fails to plausibly tie its demands for reimbursement to any plan term and thus fails to state a claim for relief.

### b. Plaintiff Has Not Plausibly Alleged Valid Assignment of Benefits

The SAC alleges entitlement to relief as to a subset of 242 ERISA plan holders despite the plans having express anti-assignment provisions. *See* Reply 8 n.3; *see also* Claims Chart. However, plaintiff both concedes it is not a participant in or beneficiary of

those plans, and fails to adequately allege derivative standing in spite of these anti-assignment provisions.

Under Section 502(a)(1)(B), only participants or beneficiaries of a benefits plan can sue to recover benefits due, enforce rights, or clarify rights to future benefits. *Simon v. Gen. Elec. Co.*, 263 F.3d 176, 177 (2d Cir. 2001) (per curiam). A "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). A "participant" is "any employee or former employee" who "is or may become eligible to receive a benefit of any type from an employee benefit plan." *Id.* § 1002(7).

Outside of those two categories, medical providers may bring claims under Section 502(a) "based on a valid assignment from a patient." *See Am. Psychiatric Ass'n*, 821 F.3d at 361. To do so, the provider must plausibly plead the existence and scope of a valid assignment to confer derivative standing under ERISA. *Id.* Because "[plan] documents are integral to the complaint and are specifically referenced in th[e] pleading," courts may properly consider such documents in deciding a motion to dismiss. *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 565 (S.D.N.Y. 2011).

An ERISA plan that includes an unambiguous anti-assignment provision renders any alleged assignment "ineffective – a legal nullity." *McCulloch Orthopedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 147 (2d Cir. 2017). However, if a plan "expressly waives" its anti-assignment provision, that is not necessarily so. *Gordon I*, 724 F. Supp. 3d at 188 (citing *Superior Biologics NY, Inc. v. Aetna, Inc.*, No. 20-cv-05291, 2022 WL 4110784, at *8–9 (S.D.N.Y. Sept. 8, 2022)). Furthermore, where plaintiff does not identify any provision in the relevant plan documents "rendering the anti-assignment provisions contained therein ambiguous," purported assignments to plaintiff are invalid "unless

16

defendants waived or are estopped from relying on the respective provision." *Angstadt v. Empire HealthChoice HMO, Inc.*, No. 15-cv-01823, 2017 WL 10844692, at *6 (E.D.N.Y. Mar. 16, 2017) (citing *Merrick v. UnitedHealth Grp. Inc.*, 175 F. Supp. 3d 110, 120 (S.D.N.Y. 2016)).

### 1.    *Plaintiff Fails to Allege Written Consent to Assignment or Waiver of Anti-Assignment Provisions*

Plaintiff admits it is not a participant in or beneficiary of any ERISA plans, but contends it is an assignee of the ERISA plan beneficiaries pursuant to valid assignment agreements. *See, e.g.*, SAC ¶ 9; Opp'n 10. Indeed, plaintiff concedes that 242 patients' plans contain anti-assignment clauses. Opp'n 12; Reply 8 n.3 (correcting number).

Nevertheless, plaintiff argues that Empire's direct dealings concerning the claims at issue constitute "full and enforceable waiver" of the provisions of the anti-assignment clauses *or* consent by Empire to the assignment of benefits notwithstanding the clauses. SAC ¶¶ 95, 100; *see also* Opp'n 8. To support this argument, plaintiff focuses on defendants' actions and written communications. Specifically, plaintiff describes: calls to Empire to confirm "eligibility and coverage" in which Empire did not "raise[] any objection" to plaintiff's claimed status as assignee, *see* Opp'n 13; written communications in which defendants provided written explanations of benefits or payment without objecting to plaintiff's claimed status as assignee, *see* SAC ¶¶ 66, 97; defendants' payment and correspondences regarding reimbursement, *see* SAC ¶ 99; and plaintiff's oral and written communications with defendants' representatives when submitting appeals and grievances, SAC ¶¶ 67–71, 95.

Plaintiff contends that defendants' awareness of its claimed status of assignee, failure to object to this status, and engagement in the "routine course of conduct"

17

described above, altogether (1) constituted "written consent" to the assignments in question, Opp'n 13–14 (summarizing SAC ¶¶ 97–100); and (2) made "plausible that Empire freely and intentionally waived the anti-assignment clauses with respect to DaSilva." Opp'n 17. However, the SAC does not plausibly suggest that defendants voluntarily or intentionally, much less clearly, relinquished their rights under active anti-assignment clauses. On the contrary, it pleads a course of dealing that has commonly been found not to sacrifice anti-assignment rights.

### i.  Written Consent to Assignment Not Plausibly Alleged

Although plaintiff argues that defendants consented to the assignment of patients' plans, it does not argue defendants expressly consented to assignment in writing. Instead, plaintiff focuses on defendants' alleged communications and actions suggesting consent.

However, the "plain meaning" of written consent clauses is that "assignments are prohibited" without the insurer or administrator's "written consent." *Superior Biologics*, 2022 WL 4110784, at *7. Interpreting ERISA plans "in an ordinary and popular sense," *Critchlow v. First Unum Life Ins. Co.*, 378 F.3d 246, 256 (2d Cir. 2004), "written consent" is thus a writing that explicitly consents to assignment, rather than a "series of communications that are silent as to assignment." *Gordon I*, 724 F. Supp. 3d at 190. Therefore, where the course of dealings between parties merely indicates defendants' willingness to "communicate directly with Plaintiff[] to some extent," there is no "written consent" to assignment of benefits. *Gordon I*, 724 F. Supp. 3d at 190. Here, plaintiff points only to a "course of dealing" between parties without any allegation of explicit written

consent to assignment. As such, plaintiff fails to plausibly allege defendants provided written consent to assignment.[4]

Plaintiff argues that defendants' actions and written explanations of benefits are adequate to indicate consent to assignments. It relies on *Neurological Surgery, PC. v. Oxford Health Plans (NY), Inc.* ("*Oxford NY*"), in which the Court found that, based on a "course of conduct" including "numerous occasions" and a "prolonged pattern of" direct payments, plaintiff was "entitled to discovery" as to whether "Defendant consented to assignments." No. 18-cv-00560, 2020 WL 13931876, at *8 (E.D.N.Y. Oct. 30, 2020). This holding is inapposite because, unlike *Oxford NY*, the parties have already been involved in discovery in this case. *See, e.g.*, Oct. 10, 2023 Min. Entry, ECF No. 19; Jan. 2024 J. Mot. to Stay Discovery, ECF No. 22.[5] Moreover, the question now is whether plaintiff has adequately alleged defendants' written consent to plaintiff's status as assignee, not what it may be able to establish after further discovery.

Furthermore, plaintiff's argument that the written consent clauses in sixty plans render their anti-assignment clauses unenforceable is without merit. Plaintiff argues that the clauses in "60 of the plans at issue" are ambiguous and thus unenforceable because they fail to specify "what is required for written consent." Opp'n 12. But plaintiff neglects to explain what about Empire's "written consent" requirement is ambiguous. Nor does

---

[4]    Plaintiff's request for "focused discovery" to establish defendants' consent to assignment, *see* Opp'n 16, is futile at this point because its ERISA claims are also dismissed on previously discussed bases.

[5]    Plaintiff cites *Neuroaxis Neurosurgical Assocs., PC v. Cigna Healthcare of N.Y., Inc.*, which is unavailing for different reasons. No. 11-cv-08517, 2012 WL 4840807 (S.D.N.Y. Oct. 4, 2012). This decision involved a motion for remand and predates *McCulloch*'s binding decision that unambiguous anti-assignment clauses render assignments ineffective. *See McCulloch*, 857 F.3d at 147.

plaintiff explain why that term would "suggest more than one meaning when viewed objectively by a reasonably intelligent person." *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London, England*, 136 F.3d 82, 86 (2d Cir. 1998). The Court will not create ambiguity where there is none. *See Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 81 (2d Cir. 2009) ("A court must not rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous."). Instead, it will follow the "more recent trend" of Second Circuit cases that give effect to anti-assignment provisions featuring written consent clauses, even when an insurer has directly paid an assignee. *See Superior Biologics*, 2022 WL 4110784, at *7–8; *see also McCulloch*, 857 F.3d at 147–48 (finding that an anti-assignment provision containing similar "consent" language prohibited assignment and thus plaintiff was not the "type of party" who may bring claims under Section 502(a)(1)(B)).

## ii.    *Waiver Not Plausibly Alleged*

Given plaintiff fails to establish assignment was consented to or that anti-assignment provisions in a subset of plans are ambiguous, assignments under those plans will be deemed invalid unless defendants "waived . . . the respective provision." *Angstadt*, 2017 WL 10844692, at *6 (quoting *Merrick*, 175 F. Supp. 3d at 120). Here, plaintiff also fails to plausibly allege waiver of any anti-assignment provisions.

Under ERISA, a waiver must be "voluntary and intentional," and requires a "clear manifestation or an intent . . . to relinquish [a] known right." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield*, 448 F.3d 573, 585 (2d Cir. 2006). "Mere silence, oversight or thoughtlessness in failing to object . . . will not support a finding of waiver." *Id.*; *see also Neurological II*, 511 F. Supp. 3d at 285–86 (holding that though the provider

"never once pointed to the anti-assignment language to deny or underpay any claim," its "inaction does not constitute waiver").

Thus, contrary to plaintiff's argument, failure to raise anti-assignment language to deny or underpay a claim and frequent communication between parties do not amount to waiver. Courts in this Circuit "have repeatedly rejected . . . arguments that a health plan's communications with and payments to medical providers constitute a waiver of anti-assignment provisions." *Gordon I*, 724 F. Supp. 3d at 190.

For one, courts have found that administrators do not waive anti-assignment provisions by direct payment to providers, even when the administrator is "explicitly permitted to pay providers directly under the plan in its discretion." *Superior Biologics*, 2022 WL 4110784, at *9 (quoting *Merrick*, 175 F. Supp. 3d at 122); *Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.*, No. 13-cv-06551, 2014 WL 4058321, at *3 (S.D.N.Y. Aug. 15, 2014) ("Health insurance companies routinely make direct payments to healthcare providers without waiving anti-assignment provisions."). Thus, defendants' choice to provide payments to plaintiff does not in itself constitute "waiver of the provisions of the respective anti assignment clauses[.]" SAC ¶¶ 99–100.

Nor do communications between the parties, even with defendants' awareness of active anti-assignment clauses, plausibly suggest waiver. *See also Neurological Surgery, P.C. v. Travelers Co.*, 243 F. Supp. 3d 318, 330–31 (E.D.N.Y. 2017). "Courts have interpreted *McCulloch* to reject this argument." *Neurological II*, 511 F. Supp. 3d at 286. *McCulloch* found that plaintiff was not an ERISA beneficiary due to an unambiguous anti-assignment provision with a written consent clause. *McCulloch*, 857 F.3d at 144, 146. There, "assignment was prohibited" despite defendants' communications with and partial payments to plaintiff. *See McCulloch*, 857 F.3d at 144, 148. The Court recognized

defendants had acknowledged that plaintiff's patient was entitled to payment from out-of-network physicians performing "the surgical procedures that [plaintiff] would be providing for the patient." *Id.* at 144. The defendant also told plaintiff it would be reimbursed at a certain rate. *Id.* Nevertheless, the Second Circuit gave effect to the anti-assignment clause, which it found "clearly prohibit[ed] assignments to out-of-network providers." *Id.* at 147–48, 147 n.3.

Plaintiff refers to a limited set of distinguishable cases to allege the application of waiver. Those cases do not overcome the principles already discussed. *Neurological I* was decided prior to *McCulloch*, which held that a valid anti-assignment clause renders a plaintiff's acceptance of an assignment ineffective. *See McCulloch*, 857 F.3d at 147; *see also LI Neuroscience Specialists v. Blue Cross Blue Shield of Florida*, 361 F. Supp. 3d 348, 355–56 (E.D.N.Y. 2019) (acknowledging the conclusions of "post-*McCulloch* anti-assignment provision cases" which render "any assignment of benefits a legal nullity").

Thus, defendants' actions do not result in waiver of the assignment clause. Indeed, that defendants now challenge plaintiff's statutory standing further shows that they have not waived anti-assignment provisions. *See Gordon I*, 724 F. Supp. 3d at 191; *Superior Biologics*, 2022 WL 4110784, at *10 ("Given that Aetna's argument on this Motion is that Plaintiffs lack standing, it is clear Aetna has not waived these provisions.").

\* \* \*

In sum, all of plaintiff's ERISA claims must be dismissed because the SAC fails to properly plead exhaustion with respect to each one. Those claims also must be dismissed because plaintiff has not tied them to specific plan terms with enough specificity to state a claim. Additionally, with respect to the large subset of claims featuring anti-assignment provisions, plaintiff lacks a cause of action because it is not a valid assignee.

Accordingly, plaintiff's ERISA claims are dismissed.

### B. The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims

Plaintiff alleges three causes of action under state law: (1) breach of express contract; (2) breach of implied contract; and (3) unjust enrichment. Defendants argue that all but 47 patients' claims fall within ERISA's "expansive pre-emption provisions" which make employee benefit plan regulation an exclusively federal concern. *See* Mot. 32. Because the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims, it need not reach defendants' argument that plaintiff's state law claims are preempted.

As described above, the Court has dismissed each of plaintiff's ERISA claims for which it had original jurisdiction and thus only state law claims remain. The Court lacks original jurisdiction over such claims. Therefore, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *see also Demopolous v. Achor Tank Lines, LLC*, 117 F. Supp. 3d 499, 513 (S.D.N.Y. 2015) (declining to exercise supplemental jurisdiction over state law claims surviving ERISA dismissal).

Thus, plaintiff's state law claims are dismissed.

## II.    Motion to Sever

Defendants also move to sever plaintiff's claims. Defendants argue that plaintiff's "thousand-plus claims" do "not arise out of the same transaction or occurrence," do not share a "common question of law or fact," and are thus misjoined. Mot. 40. Accordingly, defendants request that if plaintiff's claims are dismissed and it seeks to refile its claims, it be required to file "only such claims that are covered by the same employer's health benefits plan for a single year." Mot. 42. Plaintiff opposes this request and maintains that parties are not misjoined. In service of this argument, plaintiff argues that its claims are alleged "against a *single* health plan company, which administered the ERISA plans at issue and is subject to liability for its misadministration and violation of ERISA." Opp'n 38. The Court grants defendants' motion to sever; however, the Court defers ruling on the appropriate way to sever the claims.

Rule 20 permits joinder when the relief sought arises out of the same "transaction, occurrence, or series of transactions or occurrences, and there is a common question of law or fact." *Arch Ins. Co. v. Harleysville Worcester Ins. Co.*, 56 F. Supp. 3d 576, 583 (S.D.N.Y. 2014). Rule 21 provides a remedy for misjoinder of parties. It states in part, that "[o]n motion or on its own, the court may at any time, on just terms . . . drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. The Court makes its decision to sever "pursuant to its broad discretion in determining whether to add or drop," *Gordon Surgical Grp., P.C. v. Empire Healthchoice HMO, Inc.*, No. 21-cv-04796, 2024 WL 3012637, at *4 (S.D.N.Y. June 12, 2014) ("*Gordon III*") (quoting *Urban v. Hurley*, 261 B.R. 587, 593 (S.D.N.Y. 2001)), or otherwise sever claims against parties. This discretion is guided by "principles of fundamental fairness and judicial efficiency." *Anwar v. Fairfield Greenwich Ltd.*, 118 F. Supp. 3d 591, 619 (S.D.N.Y. 2015).

24

Further, under Rule 1, the Court must take steps to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Plaintiff's defectively unspecific complaint concerning thousands of disconnected claims requires severance.

To assess a severance motion, the Court weighs the following factors: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 214 F.R.D. 152, 155–56 (S.D.N.Y. 2003).

Here, a number of factors suggest that the claims in this case have been improperly joined and thus counsel for severance. First, plaintiffs have alleged over 1,000 claims on behalf of 366 individual patients, subject to over 140 independent self-funded health benefit plans issued by over 100 different groups and plan sponsors. Reply 25; *see also generally* Claims Chart. It is implausible that each claim, or even a majority of the claims, arose out of the same transaction or occurrence. Indeed, as discussed *supra*, plaintiff's bases for relief for the claims differ based on the plan and the results of the appeal process. Also, as pointed out above, while some plan terms are similar and some may even be identical, important distinctions differentiate many plans, including, for example, that some plans prohibit assignment of claims. *Gordon Surgical Grp., P.C. v. Empire HealthChoice HMO, Inc.*, No. 21-cv-04796, 2024 WL 3387345, at *3 (S.D.N.Y. May 16, 2024) ("*Gordon II*"), *report and recommendation adopted*, *Gordon III*.

Further, as represented by the hundred-plus exhibits in the record, each plan involves different documentary proof; what's more, plans may vary per year. In light of this, there is a strong possibility plaintiff would need to rely on different discovery and trial witnesses to prove entitlement to relief. *See Gordon II*, 2024 WL 3387345, at *3.

Additionally, the Court did not reach questions of the plans' different statutes of limitations and anticipated payment percentages, given other broad sweeping deficiencies discussed above. However, plaintiff's own papers admit that these terms vary among the over 140 plans at issue. *See* Opp'n 24–25. Moreover, although the common legal questions among the claims at issue—whether plaintiff was entitled to reimbursement from defendants and whether defendants provided the correct amount of reimbursements—are *generally* similar, that high level of generality is inadequate. There is "no overarching legal question that will resolve all of the diverse claims." *Gordon II*, 2024 WL 3387345, at *3.

In any event, the immense record and conglomeration of claims does not serve one of Rule 21's primary aims: judicial efficiency. "Whether judicial economy is best served by severance turns on whether the Court believes that having one trial encompassing all claims will be more efficient than having separate trials." *Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 122 n.4 (S.D.N.Y. 2023). Based on the possible variety of witnesses and documentary evidence alone, severance is justified. Over 140 benefit plans are at issue in this action, each containing unique clauses, provisions, and limitations. *See generally* O'Brien Decl; Claim Chart; Plan Exs., ECF Nos. 41–56, 60. Indeed, compared to *Gordon*—where defendants' claims were severed—this case involves over four times as many claims, approximately two times as many plans, affecting over three times as many patients.

Plaintiff maintains that joining all its claims against defendants in a single lawsuit would "promote judicial economy and efficiency[] because much of the discovery and depositions will be identical." Opp'n 39. Plaintiff fails to explain why this would be the case given the distinctions among the plans and claims. Joinder may be more efficient for plaintiff. However, it would not aid the Court in securing "the just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1. Even *had* plaintiff included sufficient facts in its complaint to support *each* claim for relief, without severance plaintiff would still need to present evidence as to *each* claim at the summary judgment stage, trial, or both to establish entitlement to reimbursement for each claim. Perhaps because of the lack of specificity currently contained in plaintiff's complaint, it is unclear that the claims or plans could be grouped in a way that would allow for a streamlined and efficient presentation of the evidence. And with this record, it appears it could not. Thus, defendants' motion to sever is granted.

## III.    Leave to Amend

"It is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Whether to grant or deny leave to amend is within the Court's sound discretion. *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019). Although plaintiff has already engaged in some discovery and twice amended its complaint, it has "not yet had the benefit of the Court's analysis on Defendants' motion to dismiss." *Gordon I*, 724 F. Supp. 3d at 177. Because plaintiff may still correct the pleading deficiencies outlined above, amendment is not necessarily futile.

Based on the sheer number of patients, plans, and differences among the claims at issue, and the lack of specificity as to plaintiff's alleged entitlement to relief, the Court now refrains from deciding how this case should be severed. Instead, if necessary, the Court will allow plaintiff to propose how it can sever its more than 1,000 claims in a way that addresses the issues raised above. On or before February 18, 2025, plaintiff is directed to file a status report addressing whether it intends to amend its complaint and, if so, how it proposes severing its claims.

## CONCLUSION

Defendants' motion to dismiss is hereby **GRANTED**. Defendants' motion to sever is likewise **GRANTED**. By February 18, 2025, plaintiff is to file a status report informing the Court of whether it intends to file a third amended complaint and, if so, how it proposes severing its claims.


**SO ORDERED.**


_/s/ Natasha C. Merle_____
NATASHA C. MERLE
United States District Judge


Dated:      January 17, 2025
            Brooklyn, New York