UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

DA SILVA PLASTIC AND
RECONSTRUCTIVE SURGERY, P.C.,

                *Plaintiff*,

– against –

EMPIRE HEALTHCHOICE HMO, INC.
and EMPIRE HEALTHCHOICE
ASSURANCE, INC.,

                *Defendants*.

**MEMORANDUM & ORDER**
22-cv-07121 (NCM) (JMW)

---

**NATASHA C. MERLE**, United States District Judge:

    Before the Court are plaintiff Da Silva Plastic and Reconstructive Surgery, P.C.'s and defendants Anthem HealthChoice HMO, Inc., formerly Empire HealthChoice HMO, Inc., and Anthem HealthChoice Assurance, Inc.'s, formerly Empire HealthChoice Assurance, Inc., competing proposals as to how to sever plaintiff's claims. For the reasons stated below, the Court adopts defendants' proposal and plaintiff is granted leave to file a third amended complaint for medical reimbursement claims under a single ERISA-health plan for a single year.

## BACKGROUND

    The Court assumes the parties' familiarity with the facts and procedural history. In dismissing plaintiff's second amended complaint, the Court also granted defendants' motion to sever plaintiff's claims should it file a third amended complaint. Memorandum

1

& Order ("M&O") 27–28,[1] ECF No. 62. The Court concluded that severance was appropriate because "a number of factors suggest[e]d that the claims in this case have been improperly joined." M&O 25. First, the Court found it implausible that a majority of the more than "1,000 claims on behalf of 366 individual patients, subject to over 140 independent self-funded health benefit plans issued by over 100 different groups and plan sponsors . . . arose out of the same transaction or occurrence." M&O 25. Next, the Court noted the "strong possibility plaintiff would need to rely on different discovery and trial witnesses" to prove its claims under each of the different health plans. M&O 26. The Court also pointed out that "no overarching legal question . . . will resolve all of [plaintiff's] diverse claims." M&O 26 (quoting *Gordon Surgical Grp., P.C. v. Empire HealthChoice HMO, Inc.*, No. 21-cv-04796, 2024 WL 3387345, at *3 (S.D.N.Y. May 16, 2024)) ("*Gordon II*"). Finally, the Court explained that severance was justified due to the "immense record and conglomeration of [plaintiff's] claims," because it would serve one of the goals of Rule 21: judicial efficiency. M&O 26; *see also* Fed. R. Civ. P. 21.

However, the Court deferred ruling on the appropriate way to sever the claims, and instead granted plaintiff an opportunity to propose how it would sever its claims in a manner addressing the issues raised in the Court's Order. M&O 28. Plaintiff submitted its proposal one month later. *See* Pl.'s Status Report ("Pl.'s Proposal"), ECF No. 63. Following the submission of plaintiff's proposal, the Court directed defendants to respond with their own proposal. *See* ECF Order dated February 19, 2025. Accordingly, two weeks later, defendants responded with their own proposed method of severance. *See* Defs.' Status Report ("Defs.' Proposal"), ECF No. 64.

---

[1] Throughout this Opinion, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

## LEGAL STANDARD

Rule 21 provides a remedy for misjoinder of parties and claims: "[o]n motion or on its own, the court may at any time, on just terms . . . drop a party. The court may also sever any claim against a party."[2] Fed R. Civ. P. 21. This rule "authorizes severance of any claim even without a finding of improper joinder where there are sufficient other reasons for ordering a severance." *Wilmington Tr., Nat'l Ass'n v. 31 Prince St., LLC*, No. 22-cv-05855, 2023 WL 3647397, at *4 (S.D.N.Y. May 25, 2023) (quoting *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968)). A court makes the decision to sever "pursuant to its broad discretion in determining whether to add or drop, or otherwise sever claims against parties." M&O 24 (quoting *Gordon Surgical Grp., P.C. v. Empire HealthChoice HMO, Inc.*, No. 21-cv-04796, 2024 WL 3012637, at *4 (S.D.N.Y. June 12, 2024)) ("*Gordon III*"). This discretion is guided by "principles of fundamental fairness and judicial efficiency." *Anwar v. Fairfield Greenwich Ltd.*, 118 F. Supp. 3d 591, 619 (S.D.N.Y. 2015).

In the Second Circuit, courts consider several factors in deciding whether severance is appropriate: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *Cofane Assocs., LLC v. Long Island City Devs. Grp., LLC*, No. 21-cv-07162, 2022 WL 4813060, at *7 (E.D.N.Y. Aug. 29, 2022), *report and recommendation adopted* 2022 WL 4813546 (Sept. 30, 2022). The existence of any one of these conditions suffices to justify severance. *Id.* Further, under

---

[2] Throughout this Opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

Rule 1, the Court must take steps to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

## DISCUSSION

Plaintiff proposes severing its medical reimbursement claims into at least six separate lawsuits. *See* Pl.'s Proposal 1–2. Specifically, plaintiff suggests severing its claims into different lawsuits based on four criteria: (1) whether defendants contend that they are the improper defendants for a given claim; (2) whether defendants contend that a given claim is untimely; (3) whether a given claim is governed by an ERISA health plan; and (4) whether a given claim is governed by a health plan containing surprise bill provisions. *See* Pl.'s Proposal 1–2.

For example, plaintiff suggests commencing a new lawsuit for reimbursement claims pursuant to health plans "governed by ERISA . . . which contain surprise bill provisions and which [d]efendants also contend . . . are untimely." Pl.'s Proposal 2. Excluded from that lawsuit would be claims "in which [d]efendants contend that they are improper parties to be sued." Pl.'s Proposal 2. Based on plaintiff's proposal, the only reimbursement claims that would remain in the instant suit are claims governed by ERISA health plans containing surprise bill provisions, not including claims for which defendants "contend that they are improper parties to be sued or that the claims are untimely." Pl.'s Proposal 1.

For their part, defendants argue that plaintiff's proposal "fails to sufficiently narrow the types of claims that should be grouped together for purposes of judicial economy." Defs.' Proposal 2. Instead, defendants propose that plaintiff's claims be severed such that only reimbursement claims "covered by the same health benefit plan for a particular year" are included in a single suit. Defs.' Proposal 3. In defendants' view,

4

because "the same plan terms would be at issue" for all patients receiving services covered by a particular plan in a particular year, "there is more likely to be overlapping documentary proof and trial witnesses." Defs.' Proposal 3. Further, according to defendants, because "[health] plan terms can vary year to year for the same employer[,] as can the claims administrator," plaintiff's proposal is deficient because it will result in grouping together "claims with almost zero overlapping facts, witnesses, or documents." Defs.' Proposal 2–3.

Instructive as to these competing proposals is *Gordon III*. 2024 WL 3012637. There, after dismissing without prejudice the plaintiffs' complaint alleging ERISA claims, the district court expressed "concern[] regarding the potentially improper joinder" of "291 medical [reimbursement] claims," over 200 of which "were governed by ERISA plans, and all of which were governed by a total of 72 different health insurance plans overall." *Id.* at *1. Following briefing on the joinder issue, the magistrate judge recommended by report and recommendation that the plaintiffs be permitted to replead medical reimbursement claims "with common plan terms and overlapping witnesses." *Id.* The defendants objected to the report and recommendation and proposed to "narrow[] it further, to apply only to plans of the same employer or sponsor issued the *same year*, such that all claims for patients who received medical services by [the] [p]laintiffs under the coverage year of a single plan may be grouped together in a single lawsuit." *Id.*

The district court agreed with the defendants' proposed limitation. *Id.* The court placed importance on the fact that the terms for the various health plans could vary year to year, as could the relevant claims administrator. *See id.* at *2. Thus, "narrowing the subset further to include plans issued in the same year w[ou]ld better serve the interests of judicial economy, as well as ensur[e] that the surviving claims [we]re logically related."

5

*Id.* at *1. The court reasoned that adopting the magistrate judge's recommendation of severing the claims according to their common plan terms "may prolong the litigation through additional motion practice on motions to sever," especially because, at that juncture, the court was unaware of "what [health] plan terms might be sufficiently common or analogous such that permissive joinder [wa]s appropriate." *Id.* at *3. The court also observed that it was unclear which "specific groupings of claims might yield the efficiencies contemplated by the [magistrate judge's] proposal" given the lack of clarity as to "which of the 291 different medical services claims may share overlapping witnesses." *Id.*

The Court finds this reasoning persuasive here. As explained in the Court's Order dismissing the second amended complaint, plaintiff failed to state claims for relief under ERISA because, among other reasons, it "fail[ed] to properly plead exhaustion with respect to each [reimbursement] claim," and it "failed to tie its claims for reimbursement to specific plan terms." M&O 7. Any possibility of remedying those deficiencies will necessarily require plaintiff to "provide the relevant plans' exhaustion requirements," M&O 10, and to "specify provisions at issue and plausibly allege any specific provision was violated," M&O 14. Therefore, the "logical relationship" amongst plaintiff's claims—should they survive a motion to dismiss—are the specific plan terms from the relevant health plans. *See Gordon III*, 2024 WL 3012637, at *1–3. And because plan terms vary year to year, grouping together only those reimbursement claims pursuant to specific health plans in specific years both "serve[s] the interests of judicial economy," and "ensure[s] that the surviving claims are logically related." *Id.* at *1.

To the extent plaintiff suggests that fewer lawsuits will necessarily promote judicial efficiency, *see* Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss ("Opp'n") 39, ECF No.

6

57, the Court disagrees. Plaintiff seeks relief for more than 1,000 reimbursement claims for medical services provided to more than 300 patients subject to more than 140 different health plans. *See* M&O 1. Nothing in plaintiff's proposal nor prior complaint indicates which of its hundreds of reimbursement claims will have overlapping documents or fact witnesses aside from those claims brought pursuant to the same health plan in the same year. *See N. Jersey Media Grp. Inc. v. Fox News Network, LLC*, 312 F.R.D. 111, 118 (S.D.N.Y. Nov. 20, 2015) ("Even accepting that efficiencies may be gained by having one trial, the impact of those efficiencies is significantly lessened when the lack of overlap in the documentary evidence and witness testimony between the claims is taken into account."). At bottom, there is a "lack of clarity" as to how plaintiff's proposal will "yield the efficiencies contemplated" by the proposed groupings of claims. *Gordon III*, 2024 WL 3012637, at *3.

Furthermore, other factors also weigh against plaintiff's proposal and in favor of defendants' proposal. For instance, plaintiff proposes severing its claims based on what it appears to suggest are common questions of law or fact, including whether a reimbursement claim is timely or whether an otherwise precluded claim is rendered recoverable by a health plan's surprise bill provisions. *See* Pl.'s Proposal 1–2. However, though these questions may loom broadly over some of plaintiff's claims, the question of whether a particular reimbursement claim is timely or recoverable will turn on the provisions of the specific health plan it was brought under. *See* M&O 25–27. Put differently, although these questions "are *generally* similar, that high level of generality is inadequate." M&O 26. A more tailored grouping—such as grouping together reimbursement claims whose timeliness or recoverability can be determined by reference to the same health plan terms—would better serve judicial efficiency and permit plaintiff's

7

claims to be resolved by "overarching" legal or factual questions. *See* M&O 26 (quoting *Gordon II*, 2024 WL 3387345, at *3).

Plaintiff's argument that "it would be fundamentally unfair to force Da Silva, a small independent medical practice, to commence multiple lawsuits . . . against Empire, a multi-billion [dollar] company," does not compel a different conclusion. Opp'n 40. To begin, plaintiff's suggestion that it would suffer prejudice simply because it would incur additional expense is unavailing. *See* Opp'n 40. Litigation-related expenses are a consideration any plaintiff must weigh before bringing suit. *See Moore v. Caledonia Cent. Supervisory Union*, No. 11-cv-00276, 2012 WL 4815529, at *1 (D. Vt. Oct. 10, 2012) ("The cost, burden and pressure associated with litigation is a fact of pursuing any litigation and does not suffice to show prejudice simply because a plaintiff will have to prove his case on the merits."). Moreover, the Federal Rules of Civil Procedure "do not permit a party to glom together numerous disparate claims just because it saves them money." *Gordon III*, 2024 WL 3012637, at *4. Finally, plaintiff disregards the potential prejudice its proposal would cause defendants, namely, being forced to defend against more than 1,000 reimbursement claims governed by more than 140 health plans for more than 300 patients, shoehorned into a handful of lawsuits with no clear overlap. *See id.* at *4 (noting that consolidating "291 medical services claims, arising under 72 separate health insurance plans, affecting over a hundred different patients, into a single federal action . . . impose[d] a tremendous burden upon [the] [d]efendants and the [c]ourt").

Additionally, as the Court previously explained, there is no common "transaction or occurrence" giving rise to a majority of plaintiff's separate reimbursement claims. *See* M&O 24. Indeed, nothing in plaintiff's proposal even purports to identify the contours of what transactions or occurrences give rise to the, at minimum, six separate lawsuits it

8

proposes filing. *See* Pl.'s Proposal 1–2. And to the extent plaintiff sought reimbursement for medical services and was denied, each reimbursement claim arose out of a distinct factual scenario, including the specific services a patient received, when they received treatment, the specific health plan they received benefits under, and what administrative remedies were pursued. *See Preferred Med., P.C. v. Geico Gen. Ins. Co.*, No. 03-cv-08516, 2005 WL 2777309, at *3 (S.D.N.Y. Oct. 21, 2005) (concluding that denials of 49 separate insurance claims "d[id] not arise out of the same transaction or occurrence," because each claim "involve[d] a particular automobile accident, resulting in a particular alleged injury").

Finally, as discussed above, because of the strong possibility different witnesses and documentary proof will be required for the separate claims—except potentially for those reimbursement claims brought pursuant to the same health plan in the same year—this factor also weighs in favor of adopting defendants' proposed method of severance. *See* M&O 26; *see also Salaman v. Semple*, No. 20-cv-00032, 2020 WL 6729417, at *18 (D. Conn. Nov. 16, 2020) (severing claims where "different witnesses/testimony and documentary evidence would be required to prove the separate sets of claims at trial").

9

## CONCLUSION

For the reasons stated above, the Court grants plaintiff leave to file a third amended complaint solely for those claims involving a singular ERISA healthcare plan in a singular year, without prejudice to refiling plaintiff's remaining claims in separate civil actions. Plaintiff shall file its third amended complaint no later than May 23, 2025.

**SO ORDERED.**

Dated:  April 23, 2025                         /s/ *Natasha C. Merle*
        Brooklyn, NY                           NATASHA C. MERLE
                                               United States District Judge